Gregory J. LAWRENCE and Hal D. Pugach Plaintiffs,

v.

XEROX CORPORATION, Xerox Corporation Employee Stock Ownership Plan, Crum & Foster, Inc., Crum & Foster Holdings, Inc., Talegent Holdings, Inc., Fairfax Financial Holdings Ltd.and Patricia M. Nazametz Defendants.

No. CIV. A. 98–5731 (AJL).

United States District Court, D. New Jersey.

May 26, 1999.

David M. Hoffman, DiPrima & Hoffman, Springfield, NJ, for Plaintiffs.

Lawrence M. Cole, Cole & Cole, Jersey City, Roxane N. Sokolove, Akin, Gump Strauss, Hauer & Feld, Washington, DC, Jonathan L. Sulds, Akin, Gump, Strauss, Hauer & Feld, New York City, for Defendants.

## OPINION

LECHNER, District Judge.

This is an action brought by the plaintiffs, Gregory J. Lawrence ("Lawrence") and Hal D. Pugach ("Pugach") (collectively, the "Plaintiffs"), against defendants, Xerox Corporation ("Xerox"), Xerox Corporation Employee Stock Ownership Plan (the "Xerox ESOP"), Crum & Foster, Inc. ("C & F"), Crum & Foster Holdings, Inc. ("C & F Holdings"), Talegent Holdings, Inc. ("Talegent"), Fairfax Financial Holdings Ltd. ("Fairfax") and Patricia M. Nazametz ("Nazametz") (collectively, the "Defendants"). Plaintiffs seek to recover stock, or its value, alleged to have been lost when Defendants terminated the participation of C & F employees in the Xerox ESOP.

Currently pending are the request of the Plaintiffs to amend (the "Second Request to Amend") the amended complaint (the "Amended Complaint") and the motion, filed by Defendants, to transfer the instant action (the "Motion to Transfer") to the United States District Court for the Western District of Texas (the "Western District of Texas"), pursuant to 28 U.S.C. § 1404(a) ("Section 1404(a)").[1] A motion to dismiss this matter was noticed by Defendants in connection with the Motion to

1. In support of the Motion to Transfer, Defendants submitted:
   1) Defendants' Memorandum of Law in Support of Their Motion to Transfer to the Western District of Texas (the "Moving Brief");
   2) Affidavit of Roxane N. Sokolove (the "Sokolove Aff."); and
   3) Defendants' Reply to Plaintiffs' Response to Defendants' Motion to Transfer Venue to the Western District of Texas (the "Reply Brief").

   In opposition to the Motion to Transfer, Plaintiffs submitted:

   1) Plaintiffs' Brief in Opposition to Defendants' Motion Under 28 U.S.C. Section 1404(a) to Transfer Case to the United States District Court for the Western District of Texas (the "Opposition Brief");
   2) Affidavit of Gregory J. Lawrence (the "Lawrence Aff."); and
   3) Certification of David M. Hoffman (the "Hoffman Aff.").

   By letter, dated 28 April 1998, the Plaintiffs submitted a request to amend the Amended Complaint.

Transfer, but was not briefed. *See* Opposition Brief at 1 (noting that pursuant to an agreement made between the parties at a conference on 3 March 1999, the Motion to Dismiss would be submitted for consideration after the pending Motion to Transfer was decided). For the reasons set forth below, the Second Request to Amend is granted and the Motion to Transfer is granted; the instant action is transferred for all purposes to the Western District of Texas.

*Facts*

### A. *Parties*

Plaintiffs Lawrence and Pugach were employed by C & F at its offices in Roseland, New Jersey from, respectively, about 1 December 1986 through about 7 January 1994, and from about 1 April 1983 through about 1 May 1998. Plaintiffs would have been Participants in the Xerox ESOP commencing on 31 December 1993 and thereafter, if Xerox had not terminated the Xerox ESOP.

Xerox is a New York corporation with its principal place of business in Stamford, Connecticut.

Talegent is a Delaware corporation with its principal place of business in Seattle, Washington. Talegent was formed by Xerox to act as a holding company for the insurance and financial services operations of Xerox.

C & F is a Delaware corporation with its principal place of business in Morristown, New Jersey. C & F Holdings is a Delaware corporation with its principal place of business in Morristown, New Jersey. C & F Holdings is an affiliate of C & F.

Fairfax is a Canadian corporation with its headquarters located in Toronto, Canada. Fairfax purchased the C & F entities from Xerox in mid–1998 and now does business in the United States and the State of New Jersey by operating its C & F entities from their principal places of business in Morristown, New Jersey.

The Xerox ESOP is an entity established by Xerox effective as of 1 July 1989 under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), and as defined in Section 4975(e)(7) of the United States Internal Revenue Code. The Xerox ESOP is, according to its terms, controlled by Xerox and administered by a plan administrator (the "Plan Administrator"). *See* Xerox ESOP at 30, Article 12.01, attached to Amended Complaint as Exh. A. The Plan Administrator designated in the Xerox ESOP also serves as the named fiduciary of the Xerox ESOP. *See id.*

Nazametz serves as the Plan Administrator for the Xerox ESOP. Plaintiffs allege Nazametz maintains an office at the principal office of Xerox in Stamford, Connecticut. Although not specifically set forth by either party, it appears the operations of the Xerox ESOP are also centered in Stamford, Connecticut.

### B. *Procedural History*

The instant matter was commenced by Plaintiffs on 18 December 1998. Plaintiffs filed the Amended Complaint on 16 March 1999. Defendants filed an answer to the Amended Complaint on 6 April 1999.

On 8 April 1999, the Defendants submitted the Motion to Transfer. By letter, dated and received on 28 April 1999, the Plaintiffs submitted the Second Request to Amend.

### C. *Background*

During 1983 Xerox acquired C & F, a large insurance and financial services company. On or about 1 July 1989, Xerox established the fully leveraged, defined contribution Xerox ESOP to purchase 10,-000,000 of its convertible shares for approximately $78 per share. The listed market value of one share of Xerox common stock ("Xerox Stock") on the New York Stock Exchange on 3 July 1989, the first trading day in July of 1989, was $20.81.

Plaintiffs allege that although the Xerox ESOP was facially established as a single plan, the Xerox ESOP was actually two separate, fully leveraged, defined contribution plans. Plaintiffs further allege the two plans which constituted the Xerox ESOP were operated by a single administrative structure and were controlled by the Chief Executive Officer and Board of Directors of Xerox.

The Xerox ESOP paid Xerox approximately $785,000,000 from borrowed funds for 10 million shares of Xerox Stock. The Xerox ESOP's loan to pay for the Xerox Stock purchase was secured by the Xerox Stock and a guarantee from Xerox; funds for repayment of the loan were to be derived from employee participant ("Employee Participant") concessions, Xerox Stock dividends and Xerox contributions as needed. Plaintiffs allege the Xerox ESOP did not provide for any rights of reversion.

The concessions of the Employee Participants were primarily a 1% reduction in merit pay increases and a 50% reduction in employer 401 K contributions for employees with more than 10 years of service. All Xerox Stock owned by the Xerox ESOP was to be distributed to the Employee Participants over the course of fifteen years, commencing in 1989. *See* 11 July 1999 Letter to C & F Employees, attached to Amended Complaint as Exh. B. Plaintiffs allege the establishment of the Xerox ESOP was additionally motivated by the need of Xerox to combat hostile merger or acquisition activity in 1989.

Early in 1993, Xerox announced its decision to exit the insurance and financial services business, and created Talegent and C & F Holdings to facilitate that exit and the sale of all the C & F entities. On or about 2 February 1993, the Xerox ESOP was terminated. The document distributed to all C & F employees announcing the termination of the Xerox ESOP stated that the termination "will not be a take away" and that "profit sharing replacements for the ESOP" would "be announced in the second quarter." Amended

Complaint ¶ 22 and Exh. C. Plaintiffs allege the subsequently announced merit based profit sharing plan was not even remotely equivalent to the Xerox ESOP assets which had been taken away. Plaintiffs further allege the C & F employees received little or nothing in consideration for the Xerox Stock they lost upon termination of the Xerox ESOP.

Plaintiffs seek to represent a class composed of all C & F employees, as defined in Article 1.16 of the Xerox ESOP, who were employed by C & F during the period beginning 1 July 1989 and ending on 31 December 1992, and who were employed by C & F at least through calendar year 1993. Plaintiffs allege there are approximately 10,000 C & F employees who fall within this class description.

In Count One of the Amended Complaint, Plaintiffs seek to recover stock owned by the C & F Employee Participants through the Xerox ESOP. Plaintiffs allege Xerox and C & F received $785,000,000 in 1989 as partial consideration for 10,000,000 shares of Xerox Stock, which immediately became the property of the Xerox ESOP. Plaintiffs further allege that in addition to the $785,000,000, Xerox and C & F received several significant benefits. These benefits included (a) highly significant tax savings and advantages, (b) reduction of non-union salary expenses, (c) the acquisition of additional leverage to retain valuable employees, (d) the discouragement of any unionization activity by non-union employees, (e) increased compensation for Xerox and C & F executives who were instrumental in establishing the Xerox ESOP, and (f) the use of the Xerox ESOP to combat a hostile attempt at a merger or acquisition.

Plaintiffs contend that, in violation of the rights of the C & F Employee Participants under the Xerox ESOP and in violation of 29 U.S.C. § 1132(a)(1)(B) ("Section 1132(a)(1)(B)"), Xerox, C & F, Talegent and C & F Holdings denied, and purported to cancel, the rights of the C & F Employ-

ee Participants in the Xerox ESOP assets. *See* Amended Complaint Count One & Exh. C. Plaintiffs allege Xerox, Talegent, and C & F Holdings breached their obligations under Section 1132(a)(1)(B) causing the C & F Employee Participants to suffer losses to the extent of the value of the Xerox Stock of the C & F Employee Participants. Plaintiffs further allege the net value for the Xerox Stock that was lost upon termination of the Xerox ESOP was at least $252,000,000.

In Count Two of the Amended Complaint, Plaintiffs allege Xerox, Talegent, C & F, C & F Holdings, and Nazametz are Xerox ESOP fiduciaries, as defined by ERISA. Plaintiffs further allege that when the Xerox ESOP was established in July of 1989, it constituted a classic trust fund formed for the sole benefit of its beneficiaries, including the C & F Employee Participants. Plaintiffs assert the trustees had no right to return the trust assets to Xerox or to withhold the assets from the C & F Employee Participants. Plaintiffs seek to recover from Xerox, Talegent, C & F, C & F Holdings, and Nazametz the $252,000,000 value of the Xerox Stock alleged to have been taken from Plaintiffs upon the termination of the Xerox ESOP.

In Count Three of the Amended Complaint, Plaintiffs allege the Xerox ESOP, in addition to being an agreement regulated by ERISA and the Internal Revenue Code, is a trust agreement (the "Xerox ESOP Trust Agreement"). Plaintiffs further contend the Xerox ESOP Trust Agreement defines the procedure for the disbursal of assets and the rights of parties interested in those assets. Plaintiffs assert the Xerox ESOP Trust Agreement is subject to all the applicable laws of the State of New Jersey.[2]

Plaintiffs allege Xerox, Talegent, C & F and C & F Holdings, as parties to the Xerox ESOP Trust Agreement, breached their obligations as trustees and parties to fulfill their contractual duties. Plaintiffs further allege Xerox, Talegent, C & F and C & F Holdings breached their obligation to deal fairly and in good faith. Plaintiffs seek to recover the estimated $252,000,000 value of the Xerox Stock that was lost upon termination of the Xerox ESOP.

In Count Four of the Amended Complaint, Plaintiffs allege that during early 1998, Xerox, Talegent, C & F, C & F Holdings and Fairfax, reached an agreement whereby Fairfax acquired Talegent, C & F, and C & F Holdings. Pursuant to the alleged agreement, Fairfax acquired the C & F insurance and financial services operations and approximately 1,000,000 undistributed shares of Xerox Stock which were convertible into 3,000,000 shares of Xerox Stock, as a result of a stock split. Plaintiffs assert these shares of Xerox Stock were owned by the C & F Employee Participants. Plaintiffs further assert the conversion of the 1,000,000 shares of Xerox Stock by Xerox, Talegent, C & F, C & F Holdings and Fairfax caused the C & F Employee Participants to suffer losses to the extent of the net value of the C & F Employee Participants' Xerox Stock, estimated at approximately $252,000,000.

In Count Five of the Amended Complaint, Plaintiffs Allege Xerox, Talegent, C & F, C & F Holdings and Fairfax benefitted from the sale of the C & F insurance and financial services organizations. Plaintiffs further allege that because Xerox retained the estimated 1,000,000 shares of Stock held by its former C & F employees, it was able to a) reduce its price for its C & F insurance and financial services operations, b) maintain its selling price and keep the estimated 1,000,000 shares of its former C & F Employee Participants' Xerox Stock, or c) share the benefits of the improperly secured Xerox

---

**2.** The Xerox ESOP, however, provides: "This Plan shall be governed, construed, administered and regulated in all respects under the laws of the State of New York, except in so far as they shall have been preempted by the provisions of ERISA." Xerox ESOP at 43, Article 16.02.

Stock with Fairfax, the buyer of the C & F insurance and financial services operations. Plaintiffs assert Xerox, Talegent, C & F, C & F Holdings and Fairfax have been unjustly enriched by their retention of the benefits of the estimated $252,000,000 increased value of the C & F Employee Participants' Xerox Stock, together with dividends attributable to the Xerox Stock, and interest, and demand the return of said amounts.

In Count Six of the Amended Complaint, Plaintiffs allege Xerox, Talegent, C &, F, and C & F Holdings promised to replace the Xerox ESOP assets they took away from the C & F Employee Participants with compensation of equal value. Plaintiffs further allege this promise was clear, concise, explicit and designed to stifle employee protests and litigation, and to forestall the possible departure of quality employees. *See* 3 February 1993 Memorandum to C & F Employees, Attached to Amended Complaint as Exh. C. Plaintiffs assert the C & F Employee Participants relied to their detriment on the fraudulent misrepresentations made by Xerox, C & F, and C & F Holdings.

Plaintiffs demand an injunction

a) directing that the party or parties who received and now hold the Xerox Stock taken from the Xerox ESOP, replace that Xerox Stock or its equivalent to the full extent of its value as of the day of judgment, with the replacement Xerox Stock to be deposited into the Xerox ESOP or a separate Fund established for that purpose;

b) appointing a Master to control and supervise the disbursement of the Xerox Stock or its equivalent to the Plaintiff Class;

c) directing that the Xerox Stock or its equivalent, replaced and deposited in the Xerox ESOP or separate fund, include the Xerox Stock or its equivalent to the full extent of the present value of all assets remaining in that portion of the Xerox ESOP designated to C & F Employee Participants as of 1 January 1993

after payment or allowance for the payment of debts secured by those assets or monies properly paid out of those assets, with the net value to be distributed to the C & F Employee Participants employed on 1 January 1994 either:

(1) pro rata according to their compensation, or

(2) pro rata according to their compensation and their employment longevity after January 1,1994 in accordance with Xerox ESOP practice prior to the termination of the Xerox ESOP;

d) directing that Defendants pay in addition, to the extent of their responsibility, the amount of dividends and interest earned or attributed to all assets designated to the C & F Employee Participants remaining in the Xerox ESOP as of January 1, 1993;

e) directing that Defendants pay in addition, to the extent of their responsibility, the costs of allocating and distributing all Stock or its equivalent returned to the C & F Employee Participants; and

f) directing that Defendants pay in addition, to the extent of their responsibility, the costs of suit as assessed by the Court, together with interest and Plaintiffs' reasonable attorneys' fees including the fees of experts.

*See* Amended Complaint at 20–22.

As stated, Plaintiffs commenced the instant action on 18 December 1998. In Paragraph 14 of the Amended Complaint, Plaintiffs specifically refer to the existence of a previously filed lawsuit captioned *Bakner and Harrison v. Xerox Corporation, et al.,* Case No. SA–98–CA–0230–OG (the *"Bakner* Action"). According to the Amended Complaint, the *Bakner* Action "deal[s] with the same subject matter involved herein." Amended Complaint ¶ 14. The Sokolove Affidavit states the *Bakner* Action was initiated in the Western District of Texas on 20 March 1998.

The complaint in *Bakner* (the *"Bakner* Complaint") contains allegations concerning the establishment of the Xerox ESOP, the withdrawal from the Xerox ESOP by Xerox, and the allegedly material misrepresentation that the withdrawal would not be a "take away." *See* Sokolove Aff. It appears the operative allegations in *Bakner*, are indistinguishable from those of the instant action. *See* Amended Complaint ¶ 14. Moreover, precisely as here, the *Bakner* plaintiffs sought certification of a class of all C & F employees who participated in the Xerox ESOP and had their participation terminated in 1993. *See Bakner* Complaint ¶¶ 14, 15, attached to Sokolove Aff. as Exh. A.

*Discussion*

### A.  *Second Request to Amend*

In the Second Request to Amend, Plaintiffs requested the instant action be limited to Count One and Count Three of the Amended Complaint. *See* Second Request to Amend. Plaintiffs stated this will focus the instant action on a single theory of recovery—that the Xerox ESOP irrevocably granted shares of Xerox Stock to the C & F Employee Participants. *See id.*

■ Rule 15(a) of the Federal Rules of Civil Procedure provides that, after the time for amendment as of right has expired, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). A request to amend a complaint is committed to the sound discretion of the District Court. *See Gay v. Petsock*, 917 F.2d 768, 772 (3d Cir.1990); *Skehan v. Board of Trustees of Bloomsburg State College*, 590 F.2d 470, 492 (3d Cir.1978). Absent undue delay, bad faith or dilatory motive on the part of the Plaintiffs, or undue prejudice to the Defendants, however, leave to amend should generally be granted. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Lorenz v. CSX Corp.,* 1 F.3d 1406, 1414 (3d Cir.1993).

■ In the instant action, the Second Request to Amend has been submitted in a timely fashion; the instant action is currently in its beginning stages. In addition, the requested amendment seeks to reduce the causes of action asserted in the Amended Complaint. Accordingly, it appears there will be no prejudice to the Defendants if the Second Request to Amend is granted. The Second Request to Amend is granted; the instant action shall be limited to those causes of action set forth in Count One and Count Three of the Amended Complaint.

### B.  *Motion to Transfer Pursuant to Section 1404(a)*

■ Section 1404(a) authorizes a District Court to transfer a case to any other district where venue is proper "[f]or the convenience of the parties and witnesses, in the interests of justice ...." 28 U.S.C. § 1404(a).[3] The purpose of Section 1404(a) is to avoid the waste of time, energy and money and, in addition, to safeguard litigants, witnesses and the public against avoidable inconvenience and expense. *See Tischio v. Bontex, Inc.,* 16 F.Supp.2d 511, 518 (D.N.J.1998); *Ricoh Co., Ltd. v. Honeywell, Inc.* (*"Honeywell"*), 817 F.Supp. 473 (D.N.J.1993); *American Tel. & Tel. Co. v. MCI Communications Corp.,* 736 F.Supp. 1294, 1305 (D.N.J.1990).

The terms of Section 1404(a) set forth three factors to consider when determining whether to transfer a matter: (a) the convenience of the parties, (b) the convenience of the witnesses and (c) the interests of justice. *See* 28 U.S.C. § 1404(a); *Jumara v. State Farm,* 55 F.3d 873, 879 (3d Cir.

---

**3.** Section 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

1995); *Tischio*, 16 F.Supp.2d at 518–19; *Hudson United Bank v. Chase Manhattan Bank of Conn., NA*, 832 F.Supp. 881, 887 (D.N.J.1993), *aff'd*, 43 F.3d 843 (3d Cir. 1994); *Honeywell*, 817 F.Supp. at 479.

The transfer analysis, however, should not be limited to these three factors. Rather, the decision to transfer must incorporate " 'all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.' " *Tischio*, 16 F.Supp.2d at 519 (quoting *Jumara*, 55 F.3d at 879 (citation omitted)); *Rappoport v. Steven Spielberg, Inc.*, 16 F.Supp.2d 481, 498 (D.N.J.1998); *Hudson United Bank*, 832 F.Supp. at 888.

■ A transfer analysis under Section 1404 is a flexible and individualized analysis which must be made on the unique facts presented in each case. *See Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43 (3d Cir.1988) (*"Lacey I"*); *Tischio*, 16 F.Supp.2d at 519 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249–50, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), *reh'g denied*, 455 U.S. 928, 102 S.Ct. 1296, 71 L.Ed.2d 474 (1982)); *Rappoport*, 16 F.Supp.2d at 498. A determination that transfer to another jurisdiction is appropriate represents an " 'exercise[ ] of structured discretion by trial judges appraising the practical inconveniences posed to the litigants and the court should a particular action be litigated in one forum rather than another.' " *Honeywell*, 817 F.Supp. at 479 (quoting

*Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 632 (3d Cir.1989) (*"Lony I"*) (quoting *Pain v. United Tech. Corp.*, 637 F.2d 775, 781 (D.C.Cir.1980), *cert. denied*, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981))).

There is no rigid rule governing a transfer determination by a court; " '[e]ach case turns on its facts.' " *Lacey I*, 862 F.2d at 43 (quoting *Piper*, 454 U.S. at 255–56, 102 S.Ct. 252); *Tischio*, 16 F.Supp.2d at 519; *Rappoport*, 16 F.Supp.2d at 498. Added to the mentioned factors are the "interests of justice" and the impact on judicial administration of maintaining related actions in separate fora. *See Jumara*, 55 F.3d at 879; *Tischio*, 16 F.Supp.2d at 519; *Rappoport*, 16 F.Supp.2d at 498; *Honeywell*, 817 F.Supp. at 479.

■ In *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the Supreme Court listed various factors which should be considered when deciding if a certain action should be transferred.[4] These factors fall into two broad categories.

■ The first category includes factors relating to the "private interests" of the parties in the context of the litigation. Such private interests may include the choice of forum of the plaintiff, the ease of access to sources of proof, availability of compulsory process over unwilling witnesses, the cost of attendance of willing witnesses, obstacles to a fair trial and the

---

4. *Gulf Oil* involved a motion to dismiss under the doctrine of *forum non conveniens*. Courts routinely look to the *Gulf Oil* factors for guidance on Section 1404(a) motions. *See Tischio*, 16 F.Supp.2d at 519 n. 9; *Rappoport*, 16 F.Supp.2d at 498 & n. 29 (D.N.J.1998); *Honeywell*, 817 F.Supp. at 479 n. 16; *AT & T*, 736 F.Supp. at 1305–06 & n. 15. As well, Third Circuit decisions such as *Lony v. E.I. DuPont de Nemours & Co.*, 935 F.2d 604, 609 (3d Cir.1991) (*"Lony II"*) and *Lacey I*, which involved motions to dismiss under the doctrine of *forum non conveniens*, are relevant to a motion to transfer under Section 1404(a).

Federal courts have broader discretion to transfer an action under Section 1404(a),

than to dismiss under the common law doctrine of *forum non conveniens*. *See Piper*, 454 U.S. at 253, 102 S.Ct. 252; *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955); *Joint Stock Soc. Trade House of Descendants of Peter Smirnoff, Official Purveyor to the Imperial Court v. Heublein, Inc.*, 936 F.Supp. 177, 191 (D.Del.1996) (citation omitted); *Ruccolo v. BDP, Int'l, Inc.*, No. 95–2300, 1996 WL 735575, at *17 & n. 9 (D.N.J. 25 Mar. 1996). *Cf. Lacey v. Cessna Aircraft Co.*, 932 F.2d 170 (3d Cir.), *reh'g denied en banc* (3d Cir.1991) (*"Lacey II"*); *Mediterranean Golf, Inc. v. Hirsh*, 783 F.Supp. 835, 840–41 (D.N.J.1991).

possibility of a jury view of the premises. *See Gulf Oil,* 330 U.S. at 508, 67 S.Ct. 839; *Jumara,* 55 F.3d at 879; *Tischio,* 16 F.Supp.2d at 520; *Rappoport,* 16 F.Supp.2d at 498; *Honeywell,* 817 F.Supp. at 480; *AT & T,* 736 F.Supp. at 1306. Other private interests may include the location of books and records and whether the claim arose elsewhere. *See Jumara,* 55 F.3d at 879; *Tischio,* 16 F.Supp.2d at 520; *Rappoport,* 16 F.Supp.2d at 498.

■ The Defendants have the burden of persuasion on the Motion to Transfer. *See Jumara,* 55 F.3d at 879; *Lony II,* 935 F.2d at 609; *Lony I,* 886 F.2d at 633; *Lacey I,* 862 F.2d at 43–44; *Tischio,* 16 F.Supp.2d at 520; *Rappoport,* 16 F.Supp.2d at 499; *Tranor v. Brown,* 913 F.Supp. 388, 391 (E.D.Pa.1996); *Honeywell,* 817 F.Supp. at 480. The burden is not on the Plaintiffs to show the proposed alternative forum is inadequate. *See Lacey I,* 862 F.2d at 44; *Tischio,* 16 F.Supp.2d at 520; *Rappoport,* 16 F.Supp.2d at 499; *Honeywell,* 817 F.Supp. at 480; *AT & T,* 736 F.Supp. at 1305. Rather, the Defendants must show the proposed alternative forum is not only adequate, but also more convenient than the present forum. *See Jumara,* 55 F.3d at 879; *Lacey I,* 862 F.2d at 43–44; *Tischio,* 16 F.Supp.2d at 520; *Rappoport,* 16 F.Supp.2d at 499; *Honeywell,* 817 F.Supp. at 480.

■ In making its determination, a " 'district court is required to develop adequate facts to support its decision and to articulate specific reasons for its conclusion' that transfer to another venue is appropriate." *Tischio,* 16 F.Supp.2d at 520 (quoting *Lacey I,* 862 F.2d at 39); *see also Hudson United Bank,* 832 F.Supp. at 888; *Honeywell,* 817 F.Supp. at 480. The Defendants must submit "adequate data of record" to facilitate the appropriate analysis and to meet its burden of persuasion. *Honeywell,* 817 F.Supp. at 480; *see also Piper,* 454 U.S. at 258, 102 S.Ct. 252; *Rappoport,* 16 F.Supp.2d at 499.

This inquiry does not necessarily require extensive investigation. *See Van Cauwenberghe v. Biard,* 486 U.S. 517, 529, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988); *Tischio,* 16 F.Supp.2d at 520; *Rappoport,* 16 F.Supp.2d at 499. The inquiry into the interests of the parties may be resolved by an examination of the affidavits submitted by the parties. *See Van Cauwenberghe,* 486 U.S. at 529, 108 S.Ct. 1945; *Lacey I,* 862 F.2d at 44; *Tischio,* 16 F.Supp.2d at 520; *Rappoport,* 16 F.Supp.2d at 499; *Honeywell,* 817 F.Supp. at 480. From that basis, the contentions of the Plaintiffs and the relevant private and public interests must be considered and balanced. *See Lacey I,* 862 F.2d at 45; *Tischio,* 16 F.Supp.2d at 520; *Hudson United Bank,* 832 F.Supp. at 888.

The alternative forum proposed by the Defendants in the instant matter is the Western District of Texas. *See* Moving Brief at 8. As a preliminary matter, it must be determined that the Western District of Texas venue is one in which the instant case "might have been brought." *See* 28 U.S.C. § 1404(a); *Jumara,* 55 F.3d at 879; *Tischio,* 16 F.Supp.2d at 519; *AT & T,* 736 F.Supp. at 1305.

### 1. *The Instant Case Could Have Been Brought in the Western District of Texas*

The instant case originally could have been brought in the Western District of Texas. The Defendants in this action, with the exception of Fairfax, are parties to the *Bakner* Action in the Western District of Texas. In addition, Plaintiffs here predicate federal subject matter jurisdiction on ERISA; ERISA provides for nationwide service of process with personal jurisdiction and venue, *inter alia,* where a defendant may be found. *See* 29 U.S.C. § 1132(e)(2); *Busch v. Buchman, Buchman & O'Brien, Law Firm,* 11 F.3d 1255, 1256 (5th Cir.1994). Fairfax is alleged to conduct operations throughout the United States, and accordingly may be "found" in

the Western District of Texas. The Western District of Texas is a proper forum.[5]

The Defendants must also establish the Western District of Texas is appropriate for the disposition of the instant case. *See Lacey I*, 862 F.2d at 43; *Tischio*, 16 F.Supp.2d at 519. "Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction," unless "the remedy offered by the other forum is clearly unsatisfactory." *Piper*, 454 U.S. at 254 n. 22, 102 S.Ct. 252. Because a Western District of Texas forum is capable of offering a satisfactory remedy for the parties, it is an adequate alternative forum for this dispute.

### 2. *Convenience of the Parties and Witnesses*

The primary private interests in this action are the choice of forum of the Plaintiffs and the convenience of the available districts with regard to the sources of proof, namely, the party and non-party witnesses and documentary evidence.

■■■ In this Circuit, the choice of forum by a plaintiff is a paramount concern in a Section 1404(a) analysis. *See Lony I*, 886 F.2d at 633; *Lacey I*, 862 F.2d at 45–46; *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971); *Tischio*, 16 F.Supp.2d at 521 (quoting *Honeywell*, 817 F.Supp. at 480); *Rappoport*, 16 F.Supp.2d at 499; *see also Shore Slurry Seal, Inc. v. CMI Corp.*, 964 F.Supp. 152, 156 (D.N.J.1997) (stating choice of proper forum by plaintiff is "paramount consideration" in transfer analysis). The choice is " 'entitled to greater

deference' " when a plaintiff chooses a home forum. *Tischio*, 16 F.Supp.2d at 521 (quoting *Honeywell*, 817 F.Supp. at 480); *see Piper*, 454 U.S. at 255–56, 102 S.Ct. 252; *Lony I*, 886 F.2d at 633–34; *Lacey I*, 862 F.2d at 45; *Rappoport*, 16 F.Supp.2d at 499.

■■■ Indeed, "unless the balance is strongly tipped in favor of the defendant, the plaintiff's choice of forum should not be disturbed." *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839; *Tischio*, 16 F.Supp.2d at 521 (quotation omitted); *Honeywell*, 817 F.Supp. at 480 (quotation omitted); *see also Lony II*, 935 F.2d at 609; *Lacey I*, 862 F.2d at 44. The choice of forum by a plaintiff is considered to be presumptively correct. *See Lacey I*, 862 F.2d at 45; *Tischio*, 16 F.Supp.2d at 521; *Rappoport*, 16 F.Supp.2d at 499; *Hudson United Bank*, 832 F.Supp. at 888; *Honeywell*, 817 F.Supp. at 480; *Mediterranean Golf*, 783 F.Supp. at 842.[6]

■■■ Also to be considered in a Section 1404(a) analysis is the convenience of the available districts concerning the witnesses and the documentary evidence of both parties.

> To examine 'the relative ease of access to sources of proof' and the availability of witnesses, the district court must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of the evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action.

---

5. Plaintiffs do not dispute this action could have originally been brought in the Western District of Texas. *See* Opposition Brief at 1–2 (stating venue in the Western District of Texas is "technically correct").

6. This presumption, however, "is not dispositive." *Tischio*, 16 F.Supp.2d at 521; *see also Lony I*, 886 F.2d at 634; *Lacey I*, 862 F.2d at 45–46; *AT & T*, 736 F.Supp. at 1306. The choice of forum by a plaintiff is not the only

factor to be considered in a transfer analysis. *See Jumara*, 55 F.3d at 880 (considering other factors); *Lony I*, 886 F.2d at 634; *Honeywell*, 817 F.Supp. at 480; *AT & T*, 736 F.Supp. at 1306. Instead, it is simply a preference; it is not a right. *See Tischio*, 16 F.Supp.2d at 521; *Honeywell*, 817 F.Supp. at 480; *AT & T*, 736 F.Supp. at 1306. In certain circumstances, the choice of forum by a plaintiff is afforded less weight.

*Van Cauwenberghe,* 486 U.S. at 528, 108 S.Ct. 1945 (quoting *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. 839).

The Plaintiffs filed the instant action in the District of New Jersey, their "home district."[7] In addition, the instant action involves some facts and injuries which occurred in, but which are not limited to, the State of New Jersey. The deference to the Plaintiffs' choice of forum, however, is limited, as discussed below, by the fact that maintaining the instant action in the District of New Jersey will result in duplicative litigation.

The locus of the Xerox operations and books and records appears to be in Connecticut. See Lawrence Aff. ¶ 2. C & F and C & F Holdings are located in New Jersey. Talegent is located in the State of Washington. The Xerox ESOP appears to be administered in Connecticut; Nazametz, the Plan Administrator, maintains an office in Connecticut. Fairfax, the only Defendant not also named in the *Bakner* Complaint, is located in Toronto. Defendants lead counsel operates out of Washington, D.C.

Neither party has sufficiently discussed or established which is the more convenient District for the witnesses and parties.[8] Accordingly, the presumption in favor of the Plaintiffs' choice of forum continues by default when consideration

is given to the interests of the parties and the convenience of the witnesses.

### 3. *Interests of Justice / Related Litigation*

Among the significant criteria in determining the advisability of transfer is whether transfer would promote the interests of justice. *See Jumara,* 55 F.3d at 878–880; *Tischio,* 16 F.Supp.2d at 526; *Honeywell,* 817 F.Supp. at 487. Where related lawsuits exist, " 'it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court and not simultaneously before two tribunals.' " *Honeywell,* 817 F.Supp. at 487 (quoting *Pall Corp. v. Bentley Labs., Inc.,* 523 F.Supp. 450, 453 (D.Del. 1981)); *see Travelers Indemnity Co. v. E.F. Corp.,* No. 95–5660, 1997 WL 135819, at * 8 (E.D.Pa.17 Mar.1997) ("The presence of a related case in the transferee forum is a powerful reason to grant a change of venue.") (internal citations omitted).

Transfer in such circumstances has numerous benefits:

> Cases can be consolidated before one judge thereby promoting judicial efficiency; pretrial discovery can be conducted in a more orderly manner; witnesses can be saved the time and expense of appearing at trial in more than one court; and duplicative litiga-

7. Plaintiffs, however, seek to represent a class of approximately 10,000 individuals located throughout the United States. Accordingly, the choice of a "home forum" must be viewed in light of the national scope of the instant action.

8. The Lawrence Affidavit, for example, submitted by Plaintiffs in opposition to the Motion to Transfer, is conclusory and does not appear to be based upon personal knowledge. *See* Local Civ.R. 7.2(b) ("Affidavits shall be restricted to statements of fact within the personal knowledge of the affiant. Argument of the facts and the law shall not be contained in affidavits."). The Lawrence Affidavit, in attempting to establish New Jersey as the center of operations for C & F states: "While I do not know of the precise numerical and geo-

graphic distribution of C & F employees throughout the United States, I believe . . . the C & F operations in New Jersey are dominant." Lawrence Aff. ¶ 3. While Lawrence states that he was employed as an attorney for C & F, it is unclear how Lawrence, given his lack of knowledge concerning the number and distribution of C & F employees, could conclude New Jersey was the dominant location of C & F operations.

Defendants, however, by filing the pending Motion to Transfer, have demonstrated their willingness to provide all necessary documents and witnesses in the Western District of Texas. Accordingly, the location of documents and witnesses under the control or possession of the Defendants does not weigh against the transfer of the instant action.

tion involving the filing of records in both courts is avoided, thereby eliminating unnecessary expense and the possibility of inconsistent results.

*Honeywell,* 817 F.Supp. at 487 (citing *Ballard Med. Prods. v. Concord Labs.,* 700 F.Supp. 796, 801 (D.Del.1988); *Pall,* 523 F.Supp. at 453). "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [Section] 1404 was designed to prevent." *Continental Grain Co. v. Barge FBL–585,* 364 U.S. 19, 26, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960).

■ "When two suits involving the same parties and subject matter are pending concurrently, the first-filed suit should have priority absent a showing that the balance of inconvenience favors transfer or unless there are special circumstances which justify giving priority to the second suit." *Honeywell,* 817 F.Supp. at 487 (citing *AT & T,* 736 F.Supp. at 1308); *see E.E.O.C. v. University of Pennsylvania,* 850 F.2d 969, 974 (3d Cir.), *cert. granted in part,* 488 U.S. 992, 109 S.Ct. 554, 102 L.Ed.2d 581 (1988), *aff'd,* 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990). The instant action was filed in the District of New Jersey on 18 December 1998. The *Bakner* Complaint was filed in the Western District of Texas on 20 March 1998.

The issue is whether the public interest in transferring this case to the Western District of Texas, where a related case is pending, is sufficient to effect the transfer. This question was addressed in *American Telephone & Telegraph Company v. MCI Communications Corporation. See* 736 F.Supp. at 1309–1313.

*AT & T* presented the issue of whether a case should be transferred to a district in which a related, but not identical, case had previously been filed. *See AT & T,* 736 F.Supp. at 1310. It was concluded:

In th[at] case, the interests of justice, judicial administration and economy weigh heavily in favor of transfer to the

District of Colombia. The retention of jurisdiction over the New Jersey Action would cause needless waste of judicial resources, not to mention the loss of time and expense of parties who will have to litigate related disputes in different fora. . . . The interests of justice, judicial administration and economy compel the result that one district court preside over these cases. Those interests are further enhanced by transfer to the District of Colombia because it will permit one appellate court to review the misrepresentations at issue and the remedy which will be awarded.

To the extent the related case doctrine favors transfer of the New Jersey Action to the District of Columbia, that factor heavily outweighs the private interests of AT & T in maintaining the New Jersey Action in New Jersey.

*Id.* at 1312–13; *see also Todd Shipyards Corp. v. Cunard Line Ltd.,* 708 F.Supp. 1440, 1450 (D.N.J.1989) (finding that the existence of prior pending action outweighed arguments centered upon the convenience of the parties and witnesses).

■ In the instant action, Plaintiffs waited nearly six years before filing their complaint in the District of New Jersey with the knowledge a related action was already pending in the Western District of Texas. *See* Amended Complaint ¶ 14. The instant action, as the later filed action, should be transferred to the Western District of Texas. *See AT & T,* 736 F.Supp. at 1312–13; *see also Todd Shipyards,* 708 F.Supp. at 1450.

Plaintiffs argue transferring the instant action to the Western District of Texas creates an inconvenience for all the parties, and therefore represents an effort at forum shopping on the part of the Defendants. *See* Opposition Brief at 13. Plaintiffs, however, overlook the fact the plaintiffs in the *Bakner* Action chose the Western District of Texas forum. Consequently, it does not appear the efforts of Defendants to have this matter trans-

ferred to the Western District of Texas represent forum shopping. Further, Defendants have demonstrated their willingness to make all necessary witnesses and documents available in the Western District of Texas, thereby lessening any perceived inconvenience of the Western District of Texas forum.

Plaintiffs further argue there are significant differences between the instant action and the *Bakner* Action. *See* Opposition Brief at 13–14. Plaintiffs assert the two actions have been brought under different theories with different demands for relief. *See id.* The fact remains, however, that Plaintiffs themselves characterized the *Bakner* Action as involving the "same subject matter" as involved in the instant case. Amended Complaint ¶ 14. In addition, the Plaintiffs seek to represent a class that would include the plaintiffs in the *Bakner* Action. Accordingly, litigating the instant action in the District of New Jersey will lead to duplicative discovery and expense and subject the parties to the possibility of inconsistent verdicts.

Plaintiffs also argue this is not a matter in which the proposed transferee forum has developed an extensive familiarity with the matter and its parties. *See* Opposition Brief at 13. Plaintiffs assert the *Bakner* Complaint was filed only nine months before the instant action and has not progressed beyond the preliminary stages of discovery. *See id.* This argument, however, weighs in favor of transfer. The fact the *Bakner* Action remains in its early stages will allow the District Judge in the Western District of Texas to more ·effectively and efficiently coordinate the discovery process and litigation of these matters.

A determination that transfer to another jurisdiction is appropriate represents an " 'exercise[ ] of structured discretion by trial judges appraising the practical inconvenience posed to the litigants and to the court should a particular action be litigated in one forum rather than another.' " *Lony,* 886 F.2d at 632 (quoting *Pain v. United Technologies Corp.,* 637 F.2d 775,

781 (D.C.Cir.1980)); *see also AT & T,* 736 F.Supp. at 1312. Added to that are the interests of justice and the impact of maintaining related actions in different fora. *See AT & T,* 736 F.Supp. at 1312.

In the instant matter, the interests of justice, judicial administration and economy weigh heavily in favor of transfer to the Western District of Texas. The retention of the instant matter in this District would cause the needless waste of judicial resources, not to mention the loss of time and expense to the parties who will have to litigate related disputes, indeed, disputes involving the same subject matter, in different fora. *See* Amended Complaint ¶ 14. The interests of justice, judicial economy and the avoidance of the possibility of inconsistent results require one District Court preside over these cases. Accordingly, the instant matter will be transferred to the Western District of Texas, the forum in which the related action was first filed.

*Conclusion*

For the foregoing reasons, the Second Request to Amend is granted. Further, the Motion to Transfer is granted and this action is transferred to the Western District of Texas.